ROBERT MORRISON, Employee, Plaintiff-Appellant v. PUBLIC SERVICE COMPANY
OF NORTH CAROLINA, INC., Employer, and KEY RISK MANAGEMENT SERV-
ICES, Servicing Agent, Defendants-Appellees

No. COA06-749

(Filed 17 April 2007)

**Workers' Compensation— settlement agreement—payment—
timeliness**

> Payment pursuant to a workers' compensation compromise
> settlement agreement is made when tendered, and must be ten-
> dered within 24 days to avoid a late payment penalty. The
> Industrial Commission in this case correctly denied plaintiff's
> motion for imposition of a late payment penalty where the pay-
> ment was mailed within the required period (with the last day
> tolled for the Memorial Day weekend).

Appeal by plaintiff from opinion and award of the North Carolina
Industrial Full Commission entered 20 April 2006 by Commissioner
Dianne C. Sellers. Heard in the Court of Appeals 25 January 2007.

*Scudder & Hedrick, by Alice Tejada, for plaintiff-appellant.*

*Smith Law Firm, P.C., by John Brem Smith; and Teague,
Campbell, Dennis & Gorham, L.L.P., by Bruce A. Hamilton and
Tara D. Muller, for defendants-appellees.*

JACKSON, Judge.

On 22 April 2004, defendants—Public Service Company of North
Carolina, Inc. ("defendant-employer") and Key Risk Management
Services, which administers defendant-employer's self-funded work-
ers' compensation account—voluntarily settled workers' compensa-
tion claims filed by Robert Morrison ("plaintiff"). Pursuant to the
Agreement for Final Compromise Settlement and Release
("Agreement"), defendants would pay plaintiff a lump sum pay-
ment of $127,500.00 less attorneys' fees and would continue to pay

plaintiff temporary total disability benefits up to the date the Agreement was approved by the North Carolina Industrial Commission. The parties submitted the Agreement to the Industrial Commission, and on 5 May 2004, the Industrial Commission entered an order approving the settlement.

The parties stipulated that pursuant to this Court's decision in *Carroll v. Living Centers Southeast, Inc.*, 157 N.C. App. 116, 577 S.E.2d 925 (2003), defendants were required to make the settlement payment within twenty-four days to avoid imposition of a late payment penalty. The parties further stipulated that the twenty-four day period in which to make the payment would expire on 1 June 2004. On 24 May 2004, plaintiff's counsel informed defense counsel that the settlement payment had not been received and reminded defense counsel that if payment was not received by 1 June 2004, a ten percent late penalty would attach. Ultimately, two checks were mailed to plaintiff's counsel on 1 June 2004, with one check being received on 2 June 2004 and the other on 3 June 2004.

Because plaintiff did not receive the settlement payment by 1 June 2004, plaintiff filed a motion seeking the imposition of a ten percent late payment penalty. Executive Secretary Weaver of the Industrial Commission denied plaintiff's motion on 19 July 2004, and plaintiff appealed. Thereafter, defendants and plaintiff agreed to have the dispute decided by Deputy Commissioner Lorrie L. Dollar. Deputy Commissioner Dollar, by Opinion and Award entered 22 December 2004, reversed the decision of Executive Secretary Weaver and awarded plaintiff a ten percent late payment penalty. Defendants appealed to the Full Commission, and on 20 April 2006, the Full Commission of the Industrial Commission reversed the decision of Deputy Commissioner Dollar and denied plaintiff's motion for the assessment of a late payment penalty. Commissioner Thomas J. Bolch dissented from the Full Commission's Opinion and Award, and plaintiff gave timely notice of appeal to this Court.

On appeal, plaintiff contends that the Industrial Commission erred in denying plaintiff's claim for a ten percent late payment penalty because the settlement payment was not received within the twenty-four day period required by North Carolina General Statutes, section 97-18. We disagree.

When reviewing decisions of the North Carolina Industrial Commission, this Court is charged with determining whether there is competent evidence in the record to support the Commission's find-

ings of fact and whether those findings, in turn, justify the Commission's conclusions of law. *See Perkins v. U.S. Airways,* 177 N.C. App. 205, 210-11, 628 S.E.2d 402, 406 (2006), *disc. rev. denied,* 361 N.C. 356, 644 S.E.2d 231 (2007). "The Commission's findings of fact are conclusive on appeal if supported by competent evidence, notwithstanding evidence that might support a contrary finding." *Hobbs v. Clean Control Corp.,* 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002). This Court's function is " 'to determine whether the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.,* 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Lincoln Constr. Co.,* 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "[T]he [F]ull Commission is the sole judge of the weight and credibility of the evidence . . . ." *Deese v. Champion Int'l Corp.,* 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) . "The Commission's conclusions of law are reviewed *de novo.*" *McRae v. Toastmaster, Inc.,* 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

As this Court has held, "[a]n agreement between the employer and workmen's compensation carrier and the employee for the payment of compensation benefits, when approved by the Industrial Commission, is binding on the parties thereto." *Buchanan v. Mitchell County,* 38 N.C. App. 596, 598, 248 S.E.2d 399, 400 (1978). "In approving a settlement agreement the Industrial Commission acts in a judicial capacity and the settlement as approved becomes an award enforceable, if necessary, by a court decree." *Pruitt v. Knight Publ'g Co.,* 289 N.C. 254, 258, 221 S.E.2d 355, 358 (1976). Pursuant to North Carolina General Statutes, section 97-18(e),

> [t]he first installment of compensation payable under the terms of an award by the Commission, or under the terms of a judgment of the court upon an appeal from such an award, shall become due 10 days from the day following expiration of the time for appeal from the award or judgment or the day after notice waiving the right of appeal by all parties has been received by the Commission, whichever is sooner.

N.C. Gen. Stat. § 97-18(e) (2005). Section 97-18(g), in turn, provides a grace period, whereby

> [i]f any installment of compensation is not paid within 14 days after it becomes due, there shall be added to such unpaid installment an amount equal to ten per centum (10%) thereof, which shall be paid at the same time as, but in addition to, such installment, unless such nonpayment is excused by the Commission

after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.

N.C. Gen. Stat. § 97-18(g) (2005). Combining these statutory deadlines, this Court held in *Carroll v. Living Centers Southeast, Inc.*, 157 N.C. App. 116, 577 S.E.2d 925, *disc. rev. denied*, 357 N.C. 249, 582 S.E.2d 29 (2003), that "payment of a compromise settlement award must be made within 24 days to avoid imposition of a late payment penalty unless a 'party is able to show to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake.' " *Carroll*, 157 N.C. App. at 120-21, 577 S.E.2d at 929 (quoting N.C. Gen. Stat. § 97-17(a)).

As the Full Commission correctly noted in its Opinion and Award, however, *Carroll* and its progeny have not clearly defined when payment is "made." *Carroll* itself held that the payment made pursuant to a compromise settlement agreement was late when received thirty-six days after the agreement was approved. *Id.* at 117, 577 S.E.2d at 927. Although the Court's opinion in *Carroll* discussed the facts of the case in terms of when the payment at issue was "received," the specific issue presented in the appeal was "the number of days within which payment must be *tendered* pursuant to a compromise settlement agreement for it to be deemed timely and avoid being subject to a late payment penalty." *Id.* at 118, 577 S.E.2d at 927 (emphasis added). In response to that question, this Court held that payment must be "made" within twenty-four days. *Id.* at 120-21, 577 S.E.2d at 929. The Court, in effect, used "tendered" and "made" interchangeably. *See also Felmet v. Duke Power Co., Inc.*, 131 N.C. App. 87, 90, 504 S.E.2d 815, 816 (1998) (interpreting section 97-18(g) and holding that "employers can avoid being subject to the 10% penalty by *tendering* settlement payments within thirty-nine days[1] after notice of the award is provided." (emphasis added)), *disc. rev. denied*, 350 N.C. 94, 527 S.E.2d 666 (1999). Therefore, we hold that payment pursuant to a compromise settlement agreement must be tendered within twenty-four days to avoid a late payment penalty.

Although we decline to provide a comprehensive set of circumstances by which payment is tendered pursuant to the late payment provision, we note that "[a]s defined by Black's Law Dictionary,

---

1. This Court in *Carroll* held that as a result of an amendment to section 97-17, "the statute eliminates the right to appeal within fifteen (15) days, thereby shortening the time for payment from 39 to 24 days." *Carroll*, 157 N.C. App. at 119, 557 S.E.2d at 928.

'tender' means: 'An unconditional offer of money or performance to satisfy a debt or obligation. . . . The tender may save the tendering party from a penalty for nonpayment or nonperformance or may, if the other party unjustifiably refuses the tender, place the other party in default.' " *In re Adoption of Anderson,* 165 N.C. App. 413, 419 n.1, 598 S.E.2d 638, 642 (2004) (quoting *Black's Law Dictionary* 1479-80 (7th ed. 1999)), *rev'd and disc. rev. improvidently allowed in part,* 360 N.C. 271, 624 S.E.2d 626 (2006). By defining "tender" as an "unconditional offer," we note that tendering payment is not limited to the immediate transfer of physical possession of the payment. Rather, tendering payment also may include depositing the payment, properly addressed to the payee, with the United States Postal Service or a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2). *Cf. APC Operating P'ship v. Mackey,* 841 F.2d 1031, 1034 (10th Cir. 1988) (noting that " 'tender' should be read to include an offer by mail" because, among other reasons, *"the common usage of 'tender' implies no requirement of personal delivery."* (emphasis added)).

Our holding is in accord both with the plain meaning of the statutory language and with our understanding of the legislative intent of this statutory provision. *See Spruill v. Lake Phelps Vol. Fire Dep't, Inc.,* 351 N.C. 318, 320, 523 S.E.2d 672, 674 (2000) ("When confronting an issue involving statutory interpretation, this Court's 'primary task is to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise.' " (quoting *Turlington v. McLeod,* 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988))).

First, notwithstanding the Court's holding in *Carroll* discussing when payment must be "made," the statute itself uses the word "paid." N.C. Gen. Stat. § 97-18(g) (2005). Definitions of the verb to "pay" center around the verb to "give," such as "to give money to in return for goods or services rendered" or "to give (money) in exchange for goods or services." *The American Heritage College Dictionary* 1004 (3rd ed. 1997). To "give," in turn, means, *inter alia,* "to *deliver* in exchange or recompense," "to accord or *tender* to another," "to convey or *offer* for conveyance," or "to execute and *deliver." Id.* at 577 (emphases added); *accord Black's Law Dictionary* 698 (7th ed. 1999). Thus, in accordance with the plain language of the statute, a late payment penalty applies whenever "any installment of compensation is not paid [*i.e.,* given, tendered, offered, or delivered] within 14 days after it becomes due," N.C. Gen.

Stat. § 97-18(g) (2005), as opposed to when payment is not *received* within fourteen days.

Evaluating the legislative intent behind section 97-18 compels the same reading of the statute. The Workers' Compensation Act strives to promote certainty in dealings between employees and employers regarding work-related injuries. *See Barnhardt v. Yellow Cab Co., Inc.*, 266 N.C. 419, 427, 146 S.E.2d 479, 484 (1966) ("The purpose of the Act, however, is not only to provide a swift and *certain remedy to an injured workman,* but also to insure a limited and *determinate liability for employers.*" (emphases added)), *overruled in part on other grounds, Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 198, 347 S.E.2d 814, 818 (1986). The legislature's goal of providing certainty in workers' compensation proceedings and settlements is further evidenced by the requirement imposed on employers by North Carolina General Statutes, section 97-18(h):

> Within 16 days after final payment of compensation has been made, the employer or insurer shall send to the Commission and the employee a notice, in accordance with a form prescribed by the Commission, stating that such final payment has been made, the total amount of compensation paid, the name of the employee and of any other person to whom compensation has been paid, the date of the injury or death, and the date to which compensation has been paid. If the employer or insurer fails to so notify the Commission or the employee within such time, the Commission shall assess against such employer or insurer a civil penalty in the amount of twenty-five dollars ($25.00).

N.C. Gen. Stat. § 97-18(h) (2005). As the Industrial Commission correctly noted, "[i]n order for defendant[s] to fulfill this statutory obligation, defendant[s] must know the exact date payment is made to both complete the form and determine when the statutory time period to file the form begins." Thus, our holding that payment is made when tendered provides employers with greater certainty with regards to their potential for liability pursuant to section 97-18(h).

In Conclusion of Law number 4, the Industrial Commission recognized the advantages of linking the date payment is made to the date payment is tendered:

> The most clear and determinable time to consider payment made is the time at which defendant[s] mail[] the check by depositing it with the United States Postal Service or other rec-

ognized parcel service. Defendants have control over the point in time in which the check is mailed. The defendants know this date and will have certainty that their obligation has been met. When the check is handed over to the parcel service, the check is no longer in defendant's [sic] control. This is a clearly and easily identifiable date the parties can reference to analyze their responsibilities and determine if statutory requirements have been met. . . . Defendants should not be penalized for a delay in delivery since the actual delivery of the check is not in defendant's [sic] control, but that of the postal or other parcel service.

Conversely, the Commission explained the limitations and substantial disadvantages of looking to the date of receipt by the employee:

To use the date plaintiff actually receives the check . . . will require defendant[s] to estimate the number of days it will take for the check to reach the plaintiff after mailing it to assure plaintiff receives the check within the twenty-four (24) day time period. By taking this estimation into consideration, defendant's [sic] period of time to make payment is shortened. Not only is this not an easily discernable period of time with any exactitude, but it also runs contrary to an otherwise simple process contemplated under N.C.G.S. §97-18(g). Further, using the date plaintiff receives the check to determine when payment is made may cause confusion and create an opportunity for self-interest especially since defendant[s] do[] not have control over when plaintiff receives the check.

The uncertainty inherent in discerning the date of delivery is evidenced further by the facts of this case, where defendants mailed two checks on 1 June 2004, with plaintiff receiving one check on 2 June 2004 and the other check on 3 June 2004.

When the rule set forth herein is applied to facts in the present case, we hold that defendants tendered or made the settlement payment within the twenty-four days as required by statute. The Industrial Commission entered an order on 5 May 2004 approving the parties' settlement agreement, and thus, defendants were required to make payment on or before 29 May 2004. 29 May 2004 was a Saturday, however, and the following Monday was Memorial Day. Thus, the payment deadline was extended to 1 June 2004. *See Morris v. L.G. Dewitt Trucking, Inc.*, 143 N.C. App. 339, 343, 545 S.E.2d 474, 476 (2001) (noting that pursuant to Workers' Compensation Rule 609(8), when the last day of the payment period falls on a weekend or legal

holiday, the payment period is tolled until the next day that is not a Saturday, Sunday, or legal holiday). It is uncontested that defendants mailed payment to plaintiff on 1 June 2004. Therefore, as defendants tendered or made payment within the twenty-four day period, the Full Commission did not err in denying plaintiff's motion for the imposition of a late payment penalty. Accordingly, we affirm the Opinion and Award of the Full Commission.

Affirmed.

Judges CALABRIA and GEER concur.