IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-008

Filing Date: February 20, 2009

Docket No. 30,717

DIANA CORTEZ,

      Petitioner-Petitioner,

v.

SERGIO RENE CORTEZ,

      Respondent-Respondent.


**ORIGINAL PROCEEDING ON CERTIORARI**
**James T. Martin, District Judge**

Rosner & Chavez, L.L.C.
Mary W. Rosner
Las Cruces, NM

for Petitioner

Keithly & English, P.C.
Shane A. English
Anthony, NM

for Respondent

## OPINION

**BOSSON, Justice.**

{1}    Marital settlement agreements are contracts executed by divorcing spouses setting forth the present and future obligations of the parties. They are to be interpreted and enforced according to their terms, when clear, including even the extreme case of enforcing a forfeiture of one spouse's property interest to the other. But when clarity is lacking or important terms are absent, and the parties have substantially complied with their obligations to each other, then equity must intervene to avoid a forfeiture when not to do so would be

1

unfair. Our Court of Appeals having ruled differently, we reverse and uphold the ruling of the district court.

**BACKGROUND**

{2}     Husband and Wife were married for fourteen years and had two children together before Wife filed for divorce. The divorce action proceeded over a nine-month period, and in that time Husband and Wife, aided by legal counsel, engaged in a series of negotiations regarding alimony, custody, assets, and debts. Before a final agreement had been reached, Wife obtained Husband's consent to relocate with the children to Las Vegas, Nevada, on a trial basis.

{3}     Husband and Wife eventually entered into a marital settlement agreement, which was adopted and approved by the district court as a Stipulated Final Judgment of Dissolution of Marriage. At that time, Husband and Wife owned two properties: their marital residence in Santa Teresa, New Mexico, and a rental property located in Juarez, Mexico. Under the terms of the marital settlement agreement, Husband was awarded the rental property and Wife was awarded the marital residence. The marital residence was subject to two mortgages—a first mortgage with a balance of approximately $57,000, and a second mortgage with a balance of approximately $15,000. The marital settlement agreement directed that Wife would be responsible for making payments on the first mortgage and Husband would be responsible for paying off the second mortgage.

{4}     Husband had been a joint borrower with Wife on the first mortgage, and he remained liable on that obligation to the mortgagee despite Wife's assumption of the payments. Accordingly, Wife was required to have Husband removed from the first mortgage within two years of the divorce either by transferring the existing mortgage into her name individually, by refinancing as the sole borrower, or by selling the property. In the interim, Husband was protected by a forfeiture clause in the marital settlement agreement which specified that if Wife fell sixty days behind on the mortgage payments while Husband remained liable on that debt, Husband had a right to cure all or part of her delinquency and obtain a lien on the property in that amount. In the event that Husband cured all of the delinquency, he could also take sole title to the marital home unless Wife redeemed the property within thirty days by re-paying the delinquent amount to Husband.[1]

---

[1]The forfeiture clause states in part that "if [Wife] becomes more than sixty (60) days delinquent on either or both of the mortgage obligations, then [Husband] may, but shall not be obligated to, cure all or part of the delinquency and in that event he shall have a lien on the property for all sums he elects to pay. If [Husband] elects to pay the entire amount of the mortgage delinquency, then he shall also have the right and option of assuming and succeeding to all of [Wife's] right, title and interest in the property, and in that event [Wife] shall have the right to redeem the property from [Husband] by paying [Husband] all sums paid by him to cure the delinquency within thirty (30) days after he exercises the option to assume and succeed to

**{5}** Almost immediately following the effective date of the divorce on September 5, 2006, Wife fell sixty days past due on the first mortgage. Husband elected to cure the delinquency by paying the entire past-due amount of $1,454.45. On November 28, 2006, Husband notified Wife that he intended to take over her entire interest in the property unless she exercised her right of redemption and reimbursed the delinquent amount to him within thirty days.

**{6}** On December 28, 2006, the final day of the redemption period, Wife mailed a check to Husband for the full past-due amount via overnight express mail from Las Vegas, Nevada. Delivery was first attempted on the following day, December 29, but the check was not actually received by Husband until January 4, 2007. The next day, Husband notified Wife that he rejected the redemption check because he had not received it within the thirty-day period. Thereafter, he claimed her interest in the marital residence as his own under the terms of the marital settlement agreement.

**{7}** Husband filed a motion in the district court to obtain complete title to the residence, and Wife responded that her redemption payment was timely because it had been sent within the thirty-day period. The district court sua sponte employed the "mailbox rule," and found that "[a]lthough actual delivery of the redemption payment was made after the expiration of the [thirty-day] redemption period, [Wife's] deposit of the redemption payment in the mail on the payment due date constitutes timely payment under the mailbox rule." The court awarded Husband full reimbursement for what he had paid to cure the delinquency, and affirmed Wife's title to the marital residence. On Husband's appeal, the Court of Appeals reversed, holding that a check placed in the mail on the last day of the redemption period, and not received that same day, was untimely. *Cortez v. Cortez*, 2007-NMCA-154, ¶ 1, 143 N.M. 66, 172 P.3d 615. We apply a de novo standard of review to address the legal conclusions of the district court. *Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996).

**DISCUSSION**

**{8}** We must decide whether Wife's act of placing a redemption check in the mail on the final day of the allotted period constitutes a "payment" under the terms of the marital settlement agreement. Wife correctly notes that the marital settlement agreement does not contain any express language regarding the method of making a payment. Rather, it states only that "[Wife] shall have the right to redeem the property from [Husband] by paying [Husband] . . . within thirty (30) days." At issue is whether the term "paying" within the context of this agreement requires actual delivery within the thirty-day period, or whether "paying" is satisfied upon mailing. Having moved out of state, Wife contends that payment by mail was clearly contemplated in the agreement and that in the absence of additional limiting language, any silence should be interpreted to avoid forfeiture.

---

[Wife's] interest."

3

**Mailbox Rule**

**{9}**     As a general rule, a check must be both mailed and received to constitute payment. *See, e.g.*, *Werne v. Brown*, 955 P.2d 1053, 1055 (Colo. Ct. App. 1998) ("Generally, payment by mail is not effective until receipt by the creditor . . . ."). However, the "mailbox rule" provides a limited exception and states that a check, properly addressed with postage prepaid, constitutes payment at the moment it is deposited into the mail, provided the parties either have a custom of payment by mail or have expressly authorized payment by mail. *See* 60 Am. Jur. 2d *Payment* §§ 11, 17 (2007) ("A debtor does not make a payment of a debt merely by placing a check in the mail, unless the obligee has expressly or by implication directed or consented that payment may be made in such manner."). Other jurisdictions recognize instances where the act of mailing a check constitutes delivery of payment. *See Werne*, 955 P.2d at 1055 (holding that the timely mailing of a payment before the expiration of a thirty-day period cured a default); *Wiers v. White*, 196 So. 206, 209 (Fla. 1940) ("It has been held in well-reasoned cases that by depositing a note in the mail with the intent that it should be transmitted to the payee or assignee in the usual way, the maker or assignor parts with his domination and control over it, and it and the delivery is in legal contemplation complete."); *Neuman v. Ferris*, 432 So. 2d 641, 643 (Fla. Dist. Ct. App. 1983) (finding that the mailing of a check on the final day of a grace period constituted delivery upon deposit); *Finn v. Nat'l City Bank*, 36 N.Y.S.2d 545, 546 (City Ct. 1942) (mailing of check by bank constitutes delivery to prevent attachment of debt)*; see also Bingo v. Comm'r of Internal Revenue*, 61 T.C.M. (CCH) 2782 (1991) ("The mailing of properly addressed checks may constitute delivery to the addressees.").

**{10}**     The mailbox rule in this form has never been expressly adopted in New Mexico. Our courts have adopted the common law "mailbox rule," which provides an evidentiary presumption that items properly mailed will be received by the recipient in ordinary course. *See Schneider Nat'l, Inc. v. State ex rel. Taxation & Revenue Dep't*, 2006-NMCA-128, ¶ 13, 140 N.M. 561, 144 P.3d 120. This evidentiary rule differs from the "mailbox rule" used in matters of contract construction, as set forth above, and therefore does not apply to the present dispute. Nevertheless, our Court of Appeals was compelled to evaluate the forfeiture clause in light of the mailbox rule because of the lower court's decision. Applying the rule, the Court determined that Wife's check could constitute payment at the time of mailing, only if (1) the marital settlement agreement expressly authorized payment by mail, or (2) the parties had established a pattern of mailing payments. *Cortez*, 2007-NMCA-154, ¶ 9. The Court found no basis for either exception. *Id.*

**{11}**     We acknowledge there are situations where the mailbox rule might apply to render a payment timely on the date of mailing. However, we agree that neither exception applies in this case. The contract was silent with regard to mailing, and the parties had no established pattern of mailing as this was the first time a payment had been attempted under the forfeiture clause. Therefore, we are not comfortable relying on the mailbox rule in this particular instance.

**{12}** This does not end our inquiry however. We turn to our well-established principle that an appellate court "will affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant." *Maralex Res., Inc. v. Gilbreath*, 2003-NMSC-023, ¶ 13, 134 N.M. 308, 76 P.3d 626 (internal quotation marks and citation omitted). "Unless clearly erroneous or deficient, findings of the trial court will be construed so as to uphold a judgment rather than to reverse it." *Herrera v. Roman Catholic Church*, 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct. App. 1991). We look to the facts of this case and the arguments raised by the parties to determine whether we can affirm the district court on an alternative legal basis which would not be unfair or unjust to the parties.

**Equity, Forfeiture, and Contract Law Governing Omitted Terms**

**{13}** Wife argues that equity should serve to prevent a forfeiture in this case. The Court of Appeals correctly noted that forfeitures are not favored in equity. *Cortez*, 2007-NMCA-154, ¶ 12. However, the Court indicated that the marital settlement agreement must contain an ambiguity before equity may assist Wife. *Id*. In this case, without overtly addressing the issue of ambiguity, both parties recognize that their marital settlement agreement is a contract and have offered competing and conflicting interpretations of the term "paying" in the forfeiture clause. *See Herrera v. Herrera*, 1999-NMCA-034, ¶ 9, 126 N.M. 705, 974 P.2d 675 (holding that marital settlement agreements are contracts, subject to contract law). Although the plain language of the contract unambiguously states *what* must be paid, it fails to specify whether "paying" can be accomplished by depositing a check into the mail within the thirty-day period (as Wife proposes), or whether "paying" should be construed strictly to require actual delivery of the check within thirty days (as Husband proposes). We are asked to determine which interpretation controls under the circumstances.

**{14}** When faced with competing interpretations of a contractual term, our equity jurisprudence directs us that "'the construction which avoids forfeiture must be made if it is at all possible.'" *Davies v. Boyd*, 73 N.M. 85, 90, 385 P.2d 950, 953 (1963) (Moise, J., specially concurring) (quoting *Ballard v. MacCallum*, 101 P.2d 692, 695 (Cal. 1940) (in bank)). Before we uphold a forfeiture, "'[t]he violation of a condition which involves forfeiture must be clearly established.'" *Thomas v. City of Santa Fe*, 112 N.M. 456, 460, 816 P.2d 525, 529 (Ct. App. 1991) (quoting *Johnson v. City of Hackensack*, 491 A.2d 14, 17 (N.J. Super. Ct. App. Div. 1985)). It has been said that when presented with a forfeiture clause in a contract, courts interpret the contractual language narrowly and construe all inferences against the party seeking to enforce the forfeiture. *See Davies*, 73 N.M. at 90, 385 P.2d at 953 (Moise, J., specially concurring) ("'A forfeiture from its nature implies the taking away from one of some pre-existing right, and this the courts will never do unless the equities of the situation are such there is no way to avoid it.'" (quoting *Hogg v. Forsythe*, 248 S.W. 1008, 1011 (Ky. 1923))). To evaluate the forfeiture clause in this case, we look to the express language of the contract for the condition that triggers forfeiture; we also look to the parties' intent and the circumstances surrounding the transaction. *See Thomas*, 112 N.M. at 461, 816 P.2d at 530.

5

**{15}** Although the contractual language itself is significant, we begin our analysis by examining the nature of the parties' bargain as a means to provide context for their language. The forfeiture clause is part of the larger bargain incorporated in the marital settlement agreement. A significant part of the bargain occurred early in the divorce proceedings, when Wife offered to waive her right to present and future alimony in exchange for a clear title to the marital residence. Husband agreed and surrendered his interest in the property. The marital residence represents the major portion of Wife's share of the marital assets.

**{16}** As part of this arrangement, the marital settlement agreement states that "the intention of the parties and a material part of their settlement agreement [is] that [Husband] be released from the mortgage loan obligation [on the marital residence] within two (2) years."[2] However, until Wife could have Husband released, he remained liable on the mortgage loan and his credit remained vulnerable. Accordingly, the parties, through the forfeiture clause, created a mechanism to induce timely payments by Wife on the first mortgage. In addition, the forfeiture clause allowed Husband to cure any delinquent payments in exchange for a security interest in the property equal to the amount of his payment, thereby, one would reasonably infer, protecting Husband's credit. Once Wife removed Husband from the first mortgage, the forfeiture clause would become a nullity.

**{17}** Under the circumstances, the forfeiture clause acts as a penalty provision in the event Husband was prejudiced by Wife's delinquency on the first mortgage. In such instances, rather than require strict compliance, courts have held that if the defaulting party substantially performed with reasonable diligence and in good faith, and "the other party has suffered no damage by the delay, and particularly if the property has not materially enhanced in value during the time of the delay, a Court of Equity will not enforce the forfeiture." *Steele v. Branch*, 40 Cal. 3, 11 (1870). We took a similar view when applying equitable principles to the forfeiture of a real estate contract. *Yu v. Paperchase P'ship*, 114 N.M. 635, 643, 845 P.2d 158, 166 (1992) ("valuable contractual rights should not be surrendered or forfeitures suffered by a slight delay in performance unless such intention clearly appears from the contract or where specific enforcement [upon the seller] will work injustice after a delayed tender." (internal quotation marks and citation omitted)).

**{18}** Nevertheless, if the contractual language is clear and unequivocal, we will enforce a forfeiture, even where the terms result in a hard bargain. *United Props. Ltd. v. Walgreen Props., Inc.*, 2003-NMCA-140, ¶¶ 10, 12, 134 N.M. 725, 82 P.3d 535. Therefore, we turn to a textual analysis of the forfeiture clause.

**{19}** As an initial matter, although both parties have offered equally plausible interpretations, we observe that the forfeiture clause does not expressly require actual receipt

---

[2]Wife alleged that she had found a buyer for the marital residence and closing was scheduled for January 30, 2007. However, Wife claimed that Husband declined to sign a special warranty deed, which clouded the title, and the sale could not be completed.

of payment by the thirtieth day, nor does it prohibit payment by mail.  Therefore, to construe the forfeiture clause as Husband suggests, we would have to read language into the contract that is not there.  In this case, the absence of additional, clarifying language is significant, particularly when compared to other provisions in the marital settlement agreement.

**{20}**     Elsewhere in the contract, the parties chose to include more specific payment terms regarding Husband's child support obligations.  The child support clause requires Husband or his employer to mail the monthly obligation and mandates that "payments" are "due and payable on or before the first (1st) day of each month."  The language chosen by the parties in the child support clause illustrates that they understood how to designate that payment must be actually received by a stipulated date. *See Werne*, 955 P.2d at 1055 ("Certainly, that party can avoid such consequences by clearly specifying that, even if use of the mail is permissible, only the actual receipt of payment will be effective.").  Accordingly, the absence of similarly explicit language in the forfeiture clause indicates either that actual receipt was not required, or at the very least that it was not contemplated by the parties at the time of formation.

**{21}**     These parties had the necessary resources to aid them in understanding subtle differences in language and the consequences of lack of clarity.  Both Husband and Wife were represented by able counsel experienced in family law, and the marital settlement agreement appears to have been negotiated at arms' length.  If Husband had wanted to specify the method of tender, he could have done so.  If Husband had insisted upon actual receipt of payment within the designated redemption period, he was free to negotiate for it.  But he did not do so. *Smith v. Price's Creameries*, 98 N.M. 541, 544, 650 P.2d 825, 828 (1982) ("[W]here the parties are otherwise competent and free to make a choice as to the provisions of their contract, it is fundamental that the terms of contract made by the parties must govern their rights and duties.").

**{22}**     We also consider the parties' intent, and we agree with Wife that mailing must have been contemplated by the parties because, when they finalized the marital settlement agreement, Husband knew of Wife's relocation to Nevada and the resulting distance between them.  That distance is a significant factor in interpreting this contract because, if not for Wife's relocation from Santa Teresa where both parties lived, the parties would have had no reason to anticipate the need for mailing the payment, and could therefore have reasonably expected actual delivery by the end of the thirtieth day.  However, the element of distance alters what is reasonable under the circumstances, and language which, at first blush, does not appear overtly ambiguous now raises a question of interpretation.  Because the parties could have specified how payment should be handled in light of the physical distance between them, but failed to do so, we are left with an element of uncertainty as to what was required to achieve a timely redemption under these circumstances.  Accordingly, we look to our equity jurisprudence for guidance.

**{23}**     Our courts have previously applied equitable principles to interpret silence in contracts. *See Martinez v. Martinez*, 101 N.M. 88, 91-93, 678 P.2d 1163, 1167-68 (1984);

7

*cf. Stamm v. Buchanan*, 55 N.M. 127, 135, 227 P.2d 633, 638 (1951); *Thomas,* 112 N.M. at 461, 816 P.2d at 530. In *Martinez*, where the parties' real estate contract failed to provide for either notice or time to cure in the event of default, we construed the contract's silence to avoid forfeiture and held that the purchaser was entitled to both notice and a reasonable time to cure the default before the forfeiture would be enforced. 101 N.M. at 92-93, 678 P.2d at 1167-68.

**{24}** Similarly, in *Stamm*, the parties' commercial lease failed to address whether a forfeiture provision could be enforced based on the actions of an original tenant, after that tenant had validly assigned the lease to a third party. 55 N.M. at 128, 227 P.2d at 634. We concluded that it would "violate fundamental equitable principles" to permit a forfeiture under such circumstances and construed the forfeiture clause as applying only to the tenant in possession after the assignment. *Id.* at 135, 227 P.2d at 638; *see also Thomas*, 112 N.M. at 460-61, 816 P.2d at 529-30 (denying partial reversion under equitable preference for avoiding forfeitures because the deed did not contain explicit language permitting divisibility or partial forfeiture).

**{25}** These cases indicate that contractual silence is problematic when forfeitures are sought because the contracts necessarily lack the specificity required to be confident that a forfeiture is enforceable. As we stated in *Stamm*, "where a provision so full of financial hazard and danger . . . is intended, it must rest on language so plain and unmistakable that the courts are left no alternative but to enforce it according to the letter." 55 N.M. at 135, 227 P.2d at 638. Indeed, our evolving equity jurisprudence demonstrates an appreciation for a more modern view that "[a] forfeiture declaration is essentially an equitable remedy" that must take into consideration both the clarity of the contractual language and fundamental principles of fairness. *Yu*, 114 N.M. at 643, 845 P.2d at 166.

**{26}** Applying these principles to the present case, we conclude that this contract does not exhibit the clarity of language typically required before a forfeiture will be upheld. *See Bishop v. Beecher*, 67 N.M. 339, 343, 355 P.2d 277, 279-80 (1960) (enforcing forfeiture under clear language of real estate contract). We continue to recognize that forfeiture provisions are enforceable "absent unfairness which shocks the conscience of the court." *Martinez v. Logsdon*, 104 N.M. 479, 482, 723 P.2d 248, 251 (1986) (internal quotation marks and citation omitted) (refusing to apply forfeiture clause against subpurchasers without notice because a forfeiture under these circumstances would "shock the conscience"); *cf. Bishop*, 67 N.M. at 343, 355 P.2d at 280 (stating that forfeiture provisions in real estate contracts will be enforced if they are clear, "absent unfairness which shocks the conscience of the court"); *United Props. Ltd.*, 2003-NMCA-140, ¶¶ 31-32 (denying equitable relief where renewal provision in a commercial lease was clear and unambiguous, and where lessee did not allege that lease was unconscionable). In such cases, we indicated that contractual agreements contemplating forfeitures must be clear and unequivocal before a forfeiture would be enforced. That is not the case here.

**{27}** Had the parties used clear language in the forfeiture clause and specified their

8

preference for actual receipt, we would have no choice but to enforce the bargain they created. Without such language, we rely on the principle adopted by Justice Moise in *Davies*, 73 N.M. at 90, 385 P.2d at 953, and choose that construction which avoids a forfeiture. Accordingly, we hold that mailing a check on the thirtieth day, under these particular facts and limited circumstances, constituted a timely redemption payment for the purpose of avoiding forfeiture in this case.

**{28}** This construction comports with our longstanding principles of fairness, particularly with regard to the equities at stake. In this case, it is reasonable to assume that Wife's equity interest in the property vastly outweighed Husband's $1,454.55 payment. As stated earlier, this property constituted the major portion of Wife's share of the marital assets for which she bargained away present and future alimony. There is no indication that Wife's delinquency caused Husband to suffer any prejudice to his credit. Thus, if we were to strictly construe the redemption period as Husband requests, Wife would lose the very asset she negotiated for and Husband would receive title to both the marital residence and the rental property, all for a single day's delay in the repayment of a comparatively small sum. This interpretation "collides head on with the doctrine that equity abhors forfeiture" and is unsupported by the record. *Stamm*, 55 N.M. at 132, 227 P.2d at 636.

**{29}** Moreover, a contrary interpretation in this case would place the entire risk of mailing on Wife. To comply with an "actual receipt" requirement, Wife would be required to correctly anticipate the necessary time for mailing and to consider Husband's availability to receive delivery. Other courts have recognized the inherent difficulty in making such an estimation with any precision, and we are particularly informed by the rationale in *Morrison v. Pub. Serv. Co.*, 643 S.E.2d 58, 63 (N.C. Ct. App. 2007). In *Morrison*, the plaintiff sought to collect a late payment penalty from an employer in a worker's compensation case after the plaintiff did not receive his settlement payment within the requisite twenty-four day statutory period. *Id.* at 60. The court determined that payment was "made" when it was tendered, and the court held that "tender" had occurred when the employer mailed the settlement check on the twenty-fourth day. *Id.* at 60-62. In reaching this conclusion, the court stated that

> To use the date plaintiff actually receives the check . . . will require defendant[s] to estimate the number of days it will take for the check to reach the plaintiff after mailing it to assure plaintiff receives the check within the . . . time period. By taking this estimation into consideration, defendant's [sic] period of time to make payment is shortened. . . . Further, using the date plaintiff receives the check to determine when payment is made may cause confusion and create an opportunity for self-interest especially since defendant[s] do[ ] not have control over when plaintiff receives the check.

*Id.* at 63 (alterations in original).

**{30}** The facts in this case, where the check was mailed on the thirtieth day, delivery was

9

first attempted on the thirty-first day, but Husband did not accept delivery of the check for an additional six days, exemplify these concerns. In light of these considerations, we will not place upon Wife the entire risk of unavoidable delay absent unequivocal language. We think it more reasonable to divide the risk between the parties such that mailing at any time within the thirty day redemption period constitutes a timely payment in this case.

**Statutory Redemption**

**{31}** In support of Husband's position that the redemption period should be strictly construed in his favor, Husband cites, by way of analogy, to a number of cases addressing statutory redemption under our mortgage foreclosure law. However, for the reasons that follow, we are not persuaded that our mortgage foreclosure jurisprudence is helpful to this dispute.

**{32}** In the mortgage context, statutory redemption is a narrow right that affords a debtor, having already lost in formal judicial proceedings, one last opportunity to reclaim his property. NMSA 1978, § 39-5-18 (1957, as amended through 2007). It is a form of legislative grace. Under these circumstances, New Mexico courts routinely require debtors to comply strictly with the terms set forth by statute as a condition to redemption. *See Brown v. Trujillo*, 2004-NMCA-040, 135 N.M. 365, 88 P.3d 881 (holding that debtors, by placing funds in an escrow account, did not meet the statutory requirements for redemption because they neither deposited funds with the district court nor placed cash in the hand of the purchaser); *Dalton v. Franken Const. Cos.,* 1996-NMCA-041, 121 N.M. 539, 914 P.2d 1036 (holding that an unendorsed cashier's check tendered to the district court on the last day of the redemption period was not a timely redemption because the funds were not transferred into the court account and actually available until after the redemption period had expired).

**{33}** Although we strictly enforce statutory redemption periods, in our view New Mexico's mortgage foreclosure statutes offer a poor analogy to the present case. First, this is not a standard commercial transaction that might compel a strict interpretation of the redemption period. Importantly, Husband did not loan money to Wife to purchase the property based on the value of the property, the two hallmarks of commercial lending governed by our mortgage foreclosure laws. Instead, Husband made two payments totaling a mere $1,454.55 on an existing mortgage debt, essentially making a temporary loan in that amount. Moreover, unlike mortgage foreclosure statutes, Wife did not have the benefit of prior judicial proceedings, either on this debt or the forfeiture. Thus, the policy and contextual considerations that animate our case law in regard to mortgage foreclosures simply do not exist, or if they are present at all, it is to a much lesser degree. We reject Husband's reliance upon this body of case law.

**CONCLUSION**

**{34}** We reverse the Court of Appeals and affirm the district court for the reasons stated

in this Opinion.

**{35}    IT IS SO ORDERED**.

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for _Cortez v. Cortez_, No. 30,717**

**Contracts:**

CN-AM:      Ambiguous Contracts
CN-FF:       Forfeiture
CN-IN:       Interpretation

**DR          Domestic Relations**

DR-MS       Marital Settlement Agreement

**Property:**

PR-RP:       Redemption of Property

**Remedies:**

RE-EQ:       Equity