**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2011-NMCA-092

Filing Date: August 2, 2011

Docket No. 29,839

EKER BROTHERS, INC.,

    Plaintiff-Counterdefendant/Appellant,

v.

JOHN G. REHDERS, GENERAL
CONTRACTOR, INC.,

    Defendant-Counterclaimant/Appellee.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Daniel A. Sanchez, District Judge

Sommer, Udall, Sutin, Hardwick, & Hyatt, PA
Kurt A. Sommer
Candice Lee
Santa Fe, NM

for Appellant

McClaugherty & Silver, P.C.
Tamara R. Safarik
Joe L. McClaugherty
Santa Fe, NM

for Appellee

**OPINION**

**BUSTAMANTE, Judge.**

**{1}** Eker Brothers, Inc. (Subcontractor) sued John G. Rehders, General Contractor, Inc. (General) seeking payment for work Subcontractor had performed. The district court found that Subcontractor was owed $74,964.05 and that General had incurred $42,448.20 in damages, but that Subcontractor's "claims [were] barred by its willful, material[,] and

1

anticipatory breach of the parties' contract." The court awarded General $42,448.29.[1] We conclude that the district court erred by not offsetting General's damages against the benefit General received from Subcontractor's unpaid work, and reverse.

## I.     BACKGROUND

{2}     Subcontractor submitted a bid to General to perform site and concrete work necessary to construct an elementary school for the Archdiocese of Santa Fe. After Subcontractor agreed to reduce the site work bid by $100,000, General verbally accepted the bid and work began on the project. General paid Subcontractor's first invoice, covering work from July 1 to July 31, in full. Subcontractor continued work through August, and on September 2, Subcontractor tendered an invoice for $126,358.95 covering work performed between August 1 and August 31.

{3}     On September 8, Subcontractor ceased all work on the project. Four days later, on September 12, General offered to pay $58,947.95 for the work Subcontractor had performed. Subcontractor did not accept this payment. On September 14, Subcontractor submitted an invoice for the work it had performed from August 1 to September 7 in the amount of $122,099.45. General did not pay this invoice and this lawsuit followed.

{4}     The district court concluded that the value of the work performed by Subcontractor between August 1 and September 7 and invoiced on September 14 was $74,964.05. To arrive at this number, the court began with the $122,099.45 from Subcontractor's September 14 invoice. The court then subtracted (1) $28,900 for grading work that had not actually been performed; (2) $7656 for curbs that were of poor quality; (3) $3,036.90 to cover General's cost to remove the defective curbs; (4) $5,512.50 for General's cost to re-stake an area that had been impacted by Subcontractor's departure; and (5) $2030 to cover half of the cost of fixing footings that had been damaged due to rain.

{5}     The district court next turned to General's damages. It found that General had "incurred [an extra] $50,194.45 in additional expenses due to [Subcontractor's] failure to complete the concrete work." It also found that General had mitigated its damages by completing the site work for $7,746.25 less than it would have paid Subcontractor. Subtracting the savings from the additional costs, the district court concluded that General's damages were $42,448.20. The district court did not offset the amount owed to Subcontractor against the damages, but instead entered judgment against Subcontractor for the full amount of the damages.

## II.    DISCUSSION

---

[1]It would appear that the additional $0.09 is a typographical error.

**{6}**     Subcontractor contends that the district court's decision that his claims were "barred by its willful, material[,] and anticipatory breach" was error as a matter of law, and that "[d]espite its breach, [it] was entitled to restitution for the value of the benefits its performance conferred."   Subcontractor argues that New Mexico follows Restatement (Second) of Contracts § 374 (1981), which allows a breaching party to obtain restitution for benefits conferred in excess of damages.  As we understand it, General's response is that the $74,964.05 of unpaid work performed by Subcontractor did not constitute a benefit to General and therefore should not be offset against General's damages.  General also argues that its damages exceeded any benefit.  Subcontractor has also made a substantial evidence argument, which we do not address because we agree with Subcontractor's legal argument.

## A.     The Nature of Restitution

**{7}**     Both parties have framed the issue of whether restitution must be awarded here as if it were equitable in nature, deriving from unjust enrichment.  The district court denied Subcontractor's request for equitable relief in the form of restitution for unjust enrichment. That does not, however, end our analysis.  To the extent that the requested restitution refers to an offset of compensatory damages by the amount of any benefit conferred, it is a legal issue which we review de novo. *See Primetime Hospitality, Inc. v. City of Albuquerque*, 2009-NMSC-011, ¶ 10, 146 N.M. 1, 206 P.3d 112.  As an initial matter, we must determine whether the damages question at issue here is legal or equitable in order to select the appropriate standard of review.

**{8}**     Traditionally, restitution is thought of as an equitable remedy. *See, e.g., Arena Res., Inc. v. OBO, Inc.*, 2010-NMCA-061, ¶ 15, 148 N.M. 483, 238 P.3d 357.  However, in the context of offsetting compensatory damages, at least one court has found that restitution is a legal remedy. *See Ducolon Mech., Inc. v. Shinstine/Forness, Inc.*, 893 P.2d 1127, 1129 (Wash. Ct. App. 1995).  A popular treatise notes that  "[t]he remedy of restitution, . . . [cannot] properly be described as either 'legal' or 'equitable' in any narrowly restricted signification of those terms."  12 Arthur Linton Corbin, *Corbin on Contracts* § 1103, at 10 (interim ed. 2002).  Our Supreme Court has also noted the dual nature of restitution. *See C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 512 n.10, 817 P.2d 238, 246 n.10 (1991).  As Corbin observes, modern restitution is a mixture whose rules "are the rules of equity *wherever they differ from those of the common law.*" *See Corbin on Contracts, supra*, § 1103, at 5 (emphasis added).

**{9}**     Nevertheless, equity may still intervene, as it apparently did here. *See Builders Contract Interiors, Inc. v. Hi-Lo Indus., Inc.*, 2006-NMCA-053, ¶ 8, 139 N.M. 508, 134 P.3d 795.  The district court ruled that Subcontractor was barred from recovering, effectively working a forfeiture on Subcontractor for the value of its work from August 1 to September 7. Our Supreme Court has observed that "a forfeiture declaration is essentially an equitable remedy." *Cortez v. Cortez*, 2009-NMSC-008, ¶ 25, 145 N.M. 642, 203 P.3d 857 (alteration omitted) (internal quotation marks omitted).  "The question of whether, on a particular set of facts, the district court is permitted to exercise its equitable powers is a question of law,

3

while the issue of how the district court uses its equitable powers to provide an appropriate remedy is reviewed only for abuse of discretion." *United Props. Ltd. v. Walgreen Props., Inc.*, 2003-NMCA-140, ¶ 7, 134 N.M. 725, 82 P.3d 535.

**B.      Our Case Law About Compensatory Damages and Restitution**

**{10}**      We begin our discussion with the question of damages.  As we have noted, this is a legal question, and will determine the outcome unless equity intervenes.  Subcontractor contends that in *Famiglietta v. Ivie-Miller Enters., Inc.*, 1998-NMCA-155, 126 N.M. 69, 966 P.2d 777, we recognized Restatement Section 374 and that, while not citing to it, we implicitly followed it in *Tyner v. DiPaolo*, 76 N.M. 483, 484, 416 P.2d 150, 151 (1966).  General cautions us that *Tyner* "should not be misread" as having adopted the Restatement's rule.  We begin by examining these two cases.

**{11}**      In *Famiglietta*, two sellers sold a tortilla chip distributorship to a buyer in return for a series of installment payments.  1998-NMCA-155, ¶ 1.  As a condition of the contract, one of the sellers agreed to remain employed by the distributorship for five years.  *Id.* ¶ 2.  The seller quit after eighteen months, and the buyer stopped making installment payments.  *Id.* ¶¶ 2, 9.  The sellers sued for the remaining installment payments.  *Id.* ¶ 9.  The district court, finding that the seller's breach was not material, awarded the payments to the sellers.  *Id.* ¶ 10.  On appeal, this Court noted that if the seller had "committed a material breach of the contract which remained uncured, [the b]uyer was not required to perform its remaining obligations under the contract."  *Id.* ¶ 14.  We applied a five-factor test for materiality and concluded that the district court erred in its determination that the breach was not material.  *Id.* ¶ 24.  Accordingly, we held that the district court's ruling that the buyer was obligated to make the remaining payments was wrong.  *Id.*

**{12}**      Although *Famiglietta* mentioned Section 374 of the Restatement, it did not apply or adopt it.  The focus of *Famiglietta* was the introduction of a framework for analyzing whether a breach of contract is material.  *See* 1998-NMCA-155, ¶¶ 17-24.  *Famiglietta*'s brief discussion of the consequences of material breach simply confirmed that the non-breaching party is relieved of its remaining obligations.  *See id.* ¶¶ 14, 24.  Furthermore, *Famiglietta* is limited by its unique facts: buyer had attempted to return the business to the seller, who refused, forcing buyer to sell the business in order to mitigate his damages.  *See id.* ¶ 21.  Therefore, *Famiglietta* provides little in the way of useful guidance to us in this case.

**{13}**      In *Tyner*, a subcontractor wrongfully breached his contract with a prime contractor when he stopped working on the contract.  76 N.M. at 484, 416 P.2d at 151.  The subcontractor sued for the value of "work performed and materials supplied," and the prime contractor counterclaimed for money he had spent above what he would have spent had the subcontractor completed the contract.  *Id.*  The subcontractor had not been paid for $4,055.77 of work, and it cost the prime contractor $5,961.61 to complete the unfinished job.  *Id.* at 486, 416 P.2d at 152.  The district court, concluding that the prime contractor could

offset his costs of completion against the subcontractor's unpaid work, awarded nothing to the subcontractor, and we affirmed. *Id.* at 486, 488, 416 P.2d at 153-54. However, because the prime contractor had waived his claims against the subcontractor, the court did not determine if he was entitled to the amount of his damages that exceeded the value of the subcontractor's unpaid work. *See id.* at 486, 416 P.2d at 153.

**{14}** We agree with Subcontractor that the reasoning in *Tyner* reflects the rule of Section 374 even though the case made no mention of it. There, the subcontractor was denied restitution for the benefit he conferred because the prime contractor's damages exceeded the amount of that benefit. Conversely, the Restatement would have allowed the prime contractor to recover the amount of his damages that exceeded the benefit he received from the subcontractor's work. Unfortunately for purposes of analysis, the prime contractor in *Tyner* waived his claims against the subcontractor. As a result, *Tyner* does not indicate whether the court would have awarded the excess to the prime contractor in the manner contemplated by Section 374. While we agree with the methodology set followed in the case, we do not discern from it a rule that can be clearly applied here. We thus move on to consider the application of Section 374 directly.

**C.      Restitution Under Restatement Section 374**

**{15}** Subcontractor contends that the award should be determined according to Section 374(1), which states:

> [I]f a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.

As discussed above, our cases have never adopted this section. We therefore take this opportunity to examine the arguments for and against the Restatement's position.

**{16}** At common law, a breaching party could not obtain restitution for benefits conferred. The common law rule reflected a belief that breach was "morally unworthy conduct," and that a breaching party should not benefit from his own wrong, *see Lancellotti v. Thomas*, 491 A.2d 117, 118-19 (Pa. Super. Ct. 1985) (internal quotation marks omitted). In contrast to the common law rule, the Restatement rule reflects a policy against awarding a windfall to the non-breaching party. *See id.* at 119-20. The court in *Lancellotti* rejected the view that breach is morally wrong, *see id.* at 122 ("Rules of contract law are not rules of punishment; the contract breaker is not an outlaw." (internal quotation marks omitted)), and joined the many other jurisdictions that had already adopted Restatement Section 374. *See id.* at 120-21.

**{17}** Under the Restatement, a breaching party can recover for the value of benefits conferred in excess of damages. The contract price is frequently used as evidence of the value of the benefit conferred. *See generally Corbin on Contracts*, *supra*, § 1124 & n.17, at 104. For example, in *Roberts Contracting Co. v. Valentine-Wooten Road Public Facility Board*, a subcontractor stopped performing and the Board refused to pay for some of the completed work. 2009 Ark. App. 437, at 3, 320 S.W.3d 1, 5. Arkansas had adopted the Restatement view, *see id.*, at 15, 320 S.W.3d at 11, and the court used the contract price as a basis to determine the value of the benefit conferred. *Id.* at 16-17, 320 S.W.3d at 11-12. Similarly, in *Ducolon*, a breaching subcontractor attempted to recover his costs for work performed. *See* 893 P.2d at 1128-29. The court found no error in the district court's measurement of the benefit to the general contractor as the "original contract price less [the general contractor's] cost to complete and repair." *Id.* at 1130. The court also noted that although restitution was traditionally an equitable remedy, "quantum meruit and restitution under [Section] 374 are legal remedies." *Id.* at 1129; *see also* Corbin on Contracts, *supra*, §§ 1102-1103.

**{18}** We believe that the Restatement approach is consistent with New Mexico law. We have expressed an unwillingness to award windfall damages in contract actions. *See Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶ 18, 121 N.M. 840, 918 P.2d 1340; *Bd. of Educ. of Alamogordo Pub. Sch. Dist. No. 1 v. Jennings*, 102 N.M. 762, 765, 701 P.2d 361, 364 (1985) ("[A] party whose contract has been breached is not entitled to be placed in a better position because of the breach than he would have been in had the contract been performed." (internal quotation marks omitted)). The same policy animates Section 374, which provides for restitution of benefits conferred pursuant to an explicit contract in order to prevent a windfall from being awarded. Accordingly, we now explicitly adopt the approach set forth in Section 374.

### D. Application to This Case

**{19}** Having determined that Section 374 governs the calculation of damages in this case, we must now apply it. The district court found that Subcontractor's invoice for work from August 1 to September 7 should have been in the amount of $74,964.05. The district court also found that General was damaged in the amount of $42,448.29 by Subcontractor's breach. Neither party argues that these findings are not supported by substantial evidence. The district court's finding regarding the amount owed for Subcontractor's work is essentially a finding of the contract price of the work performed. As we have discussed, this is a valid method for proving the amount of the benefit conferred. The correct amount of damages is easily concluded using the district court's findings. The amount of the benefit conferred is $74,964.05. The amount of the damages to General is $42,448.29. Applying Section 374, since the benefit is greater than the damages, Subcontractor is owed the difference of $32,515.76.

**{20}** We note that on appeal General takes a completely different approach to the calculation of damages using the original total contract price with Subcontractor as a

touchstone. We reject General's attempt to reframe the issue at this point. First, it would be unfair to Subcontractor to affirm the district court's judgment on this basis because there is no indication in the record that General made this argument to the district court. *Cf. Cordova v. World Fin. Corp.*, 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901 ("[O]ur appellate courts will affirm a district court's decision if it is right for any reasons, so long as the circumstances do not make it unfair to the appellant to affirm."). Second, General does not argue that the district court's findings of fact concerning the value of work performed and applicable offsets are not supported by substantial evidence. It is thus improper to argue for a different approach—an approach untethered to the record or the district court's findings. *See In re T.B.*, 1996-NMCA-035, ¶ 13, 121 N.M. 465, 913 P.2d 272 ("[W]e review the case litigated below, not the case that is fleshed out for the first time on appeal."). Finally, General's approach is unworkable in that (1) it allows restitution only when the benefit is greater than the benefit plus its damages—an impossible condition, (2) its calculation includes as damages a sum it never paid, and (3) it uses two different amounts for the value of Subcontractor's work.

### E.      Equity and Forfeiture

**{21}**      There remains one way that the district court's ruling can be reconciled with Section 374. The court concluded that Subcontractor's "claims [were] barred by its willful, material[,] and anticipatory breach of the parties' contract." It is conceivable that it is on this ground that the court based its decision not to offset General's damages by the amount of the benefit Subcontractor had conferred.

**{22}**      The decision to bar Subcontractor's claim causes a forfeiture. *See* Black's Law Dictionary 722 (9th ed. 2009) (defining forfeiture as "[s]omething (esp. money or property) lost or confiscated"). Forfeitures are equitable remedies. *See Cortez*, 2009-NMSC-008, ¶ 25. However, even at equity, they are disfavored. *See id.* ¶ 13. As we observed in *United Properties*,

> A court of equity should not be the first, but the last resort. It is bound by a contract as the parties have made it and has no authority to substitute for it another and different agreement, and should afford relief only where obviously there is fraud, real hardship, oppression, mistake, unconscionable results, and the other grounds of righteousness, justice and morality.

2003-NMCA-140, ¶ 31 (internal quotation marks omitted). Where a contract exists, it will be construed to avoid forfeiture absent clear and unequivocal language; silence will not support forfeiture. *See Cortez*, 2009-NMSC-008, ¶¶ 18, 25.

**{23}**      None of the conditions prerequisite to the exercise of equity are present here. There has been no allegation or finding of fraud, hardship, oppression, mistake, or unconscionability. The district court did not make findings that would indicate Subcontractor's behavior in breaching was egregious or otherwise blameworthy, and in fact

7

rejected proposed findings of fact to that effect. Furthermore, the district court found that a contract existed, but there is no finding that there was clear and unequivocal language requiring a forfeiture here. Absent any justification for the forfeiture, the district court erred as a matter of law in resorting to equity to deny Subcontractor restitution for the benefit it had conferred on General.

## III. CONCLUSION

**{24}** For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

**{25} IT IS SO ORDERED.**

 

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for _Eker Brothers, Inc. v. Rehders_, Docket No. 29,839**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| AE-RR | Right for Any Reason Doctrine |
| AE-SR | Standard of Review |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-CT | Contractors and Subcontractors |
| | |
| **CN** | **CONTRACTS** |
| CN-BR | Breach |
| CN-FF | Forfeiture |
| | |
| **RE** | **REMEDIES** |
| RE-CD | Compensatory Damages |
| RE-CO | Credits and Offsets |
| RE-EQ | Equity |
| RE-FF | Forfeiture |

| | |
|---|---|
| RE-MD | Measure of Damages |
| RE-MI | Mitigation of Damages |
| RE-RT | Restitution |
| RE-UE | Unjust Enrichment |