The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 22, 2023

**NO. S-1-SC-38872**

**RICHARD JAMES GONZAGOWSKI,**

  Plaintiff-Petitioner/Cross-Respondent,

v.

**STEAMATIC OF ALBUQUERQUE, INC.,
d/b/a STEAMATIC OF ALBUQUERQUE &
SANTA FE, INC., and GEB, INC.,**

  Defendants-Respondents/Cross-Petitioners,

and

**ALLSTATE INDEMNITY COMPANY
and GERARD BECKER,**

Defendants.

**ORIGINAL PROCEEDING ON CERTIORARI
Clay Campbell, District Judge**

Santillanes & Neidhhardt, P.C.
Janet Santillanes
Olivia Neidhardt
James T. Roach
Albuquerque, NM

The Roehl Law Firm P.C.

Jerrald J. Roehl
Katherine C. Roehl
Albuquerque, NM

for Petitioner/Cross-Respondent

Sutin Thayer & Browne, P.C.
Mariposa Padilla Sivage
Albuquerque, NM

BatesCarey LLP
Agelo L. Reppas
Chicago, IL

for Respondents/Cross-Petitioners

**OPINION**

**VIGIL, Justice.**

{1}     New Mexico does not permit a civil plaintiff to recover duplicate compensatory damages for the same injuries. *Hood v. Fulkerson*, 1985-NMSC-048, ¶ 12, 102 N.M. 677, 699 P.2d 608. The collateral source rule presents an exception to the prohibition of double recovery, permitting a plaintiff to recover the same damages from both a defendant and a collateral source. *Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶ 48, 301 P.3d 387. We have held that the payor of the prejudgment settlement of a claim qualifies as a collateral source and that the payment does not reduce the same damages the plaintiff may recover from an adjudicated wrongdoer. *McConal Aviation, Inc. v. Com. Aviation Ins. Co.*, 1990-NMSC-093, ¶¶ 15, 17, 110 N.M. 697, 799 P.2d 133; *Sanchez v. Clayton*, 1994-NMSC-064, ¶ 10, 117 N.M. 761, 877 P.2d 567. The current proceedings invite us to consider whether a payment in postjudgment settlement of a claim by an adjudicated wrongdoer qualifies as a collateral source.

{2}     Although our precedent has already limited the collateral source rule to prejudgment settlements, *see Sanchez*, 1994-NMSC-064, ¶ 10, we clarify that the collateral source rule has no application to a postjudgment payment made by an adjudicated wrongdoer. We hold that the payment, which Plaintiff Richard

Gonzagowski received in a postjudgment settlement with one defendant, Allstate Indemnity Company (Allstate), satisfied a portion of Plaintiff's damages and extinguishes Plaintiff's right to recover the same damages from a second defendant, GEB, Inc., d/b/a Steamatic of Albuquerque and Santa Fe, Inc. (Steamatic). Applying our opinion in *Sanchez*, 1994-NMSC-064, we also explain that the share of damages fully satisfied by Allstate must offset the damages Plaintiff may recover from Steamatic. We affirm, in part, and reverse, in part, the opinion of the Court of Appeals in *Gonzagowski v. Steamatic of Albuquerque, Inc.*, 2021-NMCA-056, 497 P.3d 1202. We remand to the district court for further proceedings consistent with our opinion.

## I. BACKGROUND

{3} After Plaintiff's home sustained water damage in a hailstorm, he asked his insurer Allstate to cover the loss; consequently, Steamatic was hired to perform water abatement and mold remediation services. Plaintiff claimed that the mold was not remediated properly and that he developed a severe and permanent lung condition as a result.

{4} Plaintiff filed suit against Allstate and Steamatic for his personal injuries. Plaintiff's claim against Allstate was for breach of contract on the basis that his injuries were a consequence of Allstate's failure to adhere to the mold remediation

provisions in his homeowner's insurance policy. Plaintiff asserted claims against Steamatic for breach of contract and negligence, asserting that the company failed to properly repair and remediate the mold in his home. Plaintiff abandoned his breach of contract claim against Steamatic before trial. Thus, Plaintiff's claim against Allstate was for breach of contract and his claim against Steamatic was for negligence. Although Plaintiff asserted different theories of liability against each defendant, Plaintiff sought the same compensatory damages from both Allstate and Steamatic.

{5} During the jury instructions conference, the three parties and the district court discussed potential issues arising from Plaintiff's attempt to recover the same damages from both defendants. With input from the parties, the district court set out to craft a special verdict form that would permit the jury to allocate responsibility for damages as between the parties.

{6} The special verdict form began by asking the jury to answer a series of interrogatories on the substantive elements of the parties' claims and defenses. As relevant to the current appeal, the jury found that Steamatic was an independent contractor, that Allstate breached its contract, and that Steamatic was negligent. Allstate's breach and Steamatic's negligence were also found to have caused Plaintiff's injuries.

3

{7}     The jury determined that Plaintiff had failed to mitigate his damages with respect to Allstate's breach and Steamatic's negligence. Two interrogatories on the special verdict form asked the jury to compare each defendant's conduct to Plaintiff's failure to mitigate "and find a percentage that each party's conduct contributed to [Plaintiff's] damages." In response to Question No. 5, the jury found that Allstate's conduct contributed 60% and that Plaintiff's failure to mitigate contributed 40%. In response to Question No. 9, the jury found that Steamatic's negligence contributed 80% and Plaintiff's failure to mitigate contributed 20%.

{8}     The jury was asked to identify Plaintiff's "total compensatory damages." The jury set the amount of Plaintiff's compensatory damages at $2.5 million. Question No. 12 asked the jury to "[i]dentify the total percentage of compensatory damages caused by each of" the three parties. The jury answered that, of Plaintiff's total compensatory damages, Allstate caused 30%, Steamatic caused 55%, and Plaintiff caused 15%.

{9}     After trial, the parties disagreed about the proper allocation of damages in light of the jury's findings. Plaintiff argued that the jury's verdict was inconsistent with the jury findings, that Questions No. 5 and 9 reflected the proper allocation of damages as to each defendant, and that Question No. 12 was "surplusage." The defendants argued that the jury's verdict was consistent, in that the jury allocated

4

responsibility for causing Plaintiff's injuries (Question No. 12), and also found that Plaintiff failed to mitigate his damages as to each defendant (Questions No. 5 and 9).

{10}     The district court resolved this dispute by concluding that Question No. 12 expressed the jury's findings on the allocation of damages. Thus, the district court found that Plaintiff suffered $2.5 million in total compensatory damages, of which Allstate caused 30%, Steamatic caused 55%, and Plaintiff caused 15%. The district court entered final judgment accordingly, adjudicating Allstate liable for $0.75 million and Steamatic liable for $1.375 million.

{11}     Following entry of the final judgment, Allstate settled with Plaintiff and secured full satisfaction and release from the judgment. The record does not reflect the amount of Allstate's postjudgment payment to Plaintiff. But, significantly, no party appealed or sought to amend the final judgment against Allstate, and no party disputes Allstate's full satisfaction of the judgment.

{12}     Shortly after this postjudgment settlement, Plaintiff moved to amend the final judgment as only against Steamatic. Plaintiff once again challenged the damages allocation and asserted that damages should be allocated using Question No. 9, the interrogatory concluding that Steamatic's negligence contributed 80% to his $2.5 million total compensatory damages. The district court agreed and entered an

amended judgment setting aside the prior final judgment as against Steamatic. The amended judgment specified that Steamatic was liable to Plaintiff for $2 million in compensatory damages.

{13} Steamatic then asked for an offset of $0.75 million, the amount reflecting the damages allocated to Allstate in the final judgment. Steamatic argued that permitting Plaintiff to accept satisfaction of the Allstate judgment and to recover $2 million from Steamatic would result in Plaintiff recovering twice for the same damages. Plaintiff responded that an offset was inappropriate because Allstate's settlement was a collateral source. The district court agreed with Plaintiff and denied the offset.

{14} Steamatic appealed, contesting only the district court's denial of the requested offset. The Court of Appeals reversed the district court, holding that Allstate's payment satisfied a portion of Plaintiff's damages and reduced the amount of compensatory damages that Plaintiff could recover from Steamatic. *See Gonzagowski*, 2021-NMCA-056, ¶¶ 10-14. The Court of Appeals also concluded that Allstate in its settlement of the final judgment was not a collateral source. *Id.* ¶¶ 17-18. The Court of Appeals, however, disagreed that the amount of the offset was necessarily $0.75 million, and instead concluded that the amount of the offset was equal to the amount of Allstate's actual postjudgment payment to Plaintiff. *Id.* ¶¶ 9,

15. The Court of Appeals remanded with instructions to ascertain the amount that Plaintiff recovered from Allstate in the settlement. *Id.*

{15} Plaintiff petitioned for writ of certiorari to review the Court of Appeals' conclusion that Allstate in its postjudgment payment was not a collateral source. Steamatic cross-petitioned for review on the amount of the offset. We granted both petitions. We review the legal issues presented de novo. *See Sunnyland,* 2013-NMSC-017, ¶ 46; *Eker Brothers, Inc. v. Rehders*, 2011-NMCA-092, ¶ 7, 150 N.M. 542, 263 P.3d 319.

## II.    DISCUSSION

{16} We assess whether Allstate's payment in satisfaction of the final judgment qualifies Allstate as a collateral source. We conclude that, in a postjudgment settlement with an adjudicated wrongdoer, that payor is not a collateral source. We then explain that Plaintiff's recovery from Steamatic must be reduced by the damages fully satisfied by Allstate.

### A.    The Prohibition of Double Recovery and the Collateral Source Rule

{17} "New Mexico does not allow duplication of damages or double recovery for injuries received." *Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 20, 110 N.M. 314, 795 P.2d 1006. The rule prohibiting double recovery "is founded on the principle that a claimant is only entitled to one payment of its loss and that an injured party

7

should not be allowed to recover more than once for the same wrong." 47 Am. Jur. 2d *Judgments* § 769 (2017) (footnote omitted). This is because "[t]he purpose of compensatory damages is to make the injured party whole by compensating it for losses." *Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶ 11, 121 N.M. 840, 918 P.2d 1340.

{18}     Accordingly, "[w]here there are different theories of recovery and liability is found on each, but the relief requested was the same, namely compensatory damages, the injured party is entitled to only one compensatory damage award." *Hood*, 1985-NMSC-048, ¶ 12. When a plaintiff's compensatory damages award is fully or partially satisfied, the plaintiff's right to recover the same damages is extinguished to the extent of the satisfaction, "regardless of the theories upon which the respective claims for relief are based." *Sanchez*, 1994-NMSC-064, ¶ 6; *see also Vaca v. Whitaker*, 1974-NMCA-011, ¶ 16, 86 N.M. 79, 519 P.2d 315 ("[A] plaintiff is entitled to but one compensation for [the plaintiff's] loss and that satisfaction of [the plaintiff's] claim prevents its further enforcement."); Restatement (Second) of Judgments § 50 (1982) ("Any consideration received by the judgment creditor in payment of the judgment debtor's obligation discharges, to the extent of the amount of value received, the liability to the judgment creditor of all other persons liable for the loss.").

{19}    The collateral source rule is an exception to the general prohibition of double recovery. *McConal*, 1990-NMSC-093, ¶ 17. The rule provides that "[c]ompensation received from a collateral source does not operate to reduce damages recoverable from a wrongdoer." *Trujillo v. Chavez*, 1966-NMSC-175, ¶ 17, 76 N.M. 703, 417 P.2d 893. "In other words, if a plaintiff is compensated for . . . injuries by any source unaffiliated with the defendant, the defendant must *still* pay damages, even if this means that the plaintiff recovers twice." *Sunnyland*, 2013-NMSC-017, ¶ 48. For example, "[p]ublic assistance and social security constitute benefits from a collateral source, and they are not subject to offset from an award of damages." *Smith v. FDC Corp.*, 1990-NMSC-020, ¶ 23, 109 N.M. 514, 787 P.2d 433. The proceeds of an insurance policy procured for the benefit of a plaintiff is another common collateral source. Restatement (Second) of Judgments § 50 cmt. e. By excluding compensation provided by a collateral source from the same damages recoverable from a wrongdoer, the rule thereby "allows the ultimate burden of compensating the plaintiff to fall on the defendant, rather than on blameless but generous parties." *Sunnyland*, 2013-NMSC-017, ¶ 49.

{20}    In *McConal*, 1990-NMSC-093, this Court extended the collateral source rule to a payment made by a defendant in prejudgment settlement of a claim. *Id.* ¶¶ 17-22. The plaintiff in *McConal* sued an insurance broker for negligence and an insurer

for breach of contract. *Id.* ¶¶ 1-4. The plaintiff settled with the broker prior to trial. *Id.* ¶ 5. The insurer proceeded to trial and was adjudicated liable. *Id.* ¶¶ 5-6. The insurer moved to offset the broker's settlement against the judgment. *Id.* ¶ 7. The trial court denied the offset. *Id.*

{21}     On appeal, the *McConal* Court affirmed the denial of the offset. *Id.* ¶ 22. The three justices on the panel were not able to reach consensus on whether the same damages were sought from both the broker and the insurer. *Id.* ¶ 13 (plurality opinion); *id.* ¶ 27 (Montgomery, J., specially concurring). However, the justices agreed that the policies of the collateral source rule and the encouragement of settlements suggested that the plaintiff should receive the benefit of the prejudgment settlement. *Id.* ¶¶ 20-21; *cf. id.* ¶¶ 34-36 (Montgomery, J., specially concurring). As noted by the *McConal* plurality opinion, the broker settled with the plaintiff prior to entry of judgment, and the broker's payment was therefore "in the legal sense, voluntary." *Id.* ¶ 19 (quoting *Rose v. Hakim*, 335 F. Supp. 1221, 1236 (D.D.C. 1971)). By settling, both the plaintiff and the broker lost the chance of attaining a better outcome at trial. *McConal*, 1990-NMSC-093, ¶ 21. The *McConal* plurality noted, "if we were to allow [the insurer] the offset it seeks, the odds would be better for a defendant who refuses to settle and proceeds to trial." *Id.* Further, if the insurer were permitted to offset the broker's settlement, then the insurer would have its

10

"liability borne by a party who had not been adjudged liable and might never have been even if [the party] had gone to trial." *Id.*

{22} Plaintiff argues that he should be permitted to recover the same damages from both Allstate and Steamatic because Allstate is a collateral source. Plaintiff likens his settlement with Allstate to the settlement in *McConal* and asks this Court to hold that the collateral source rule extends to settlements made after entry of judgment. Steamatic responds that only prejudgment settlements may qualify as collateral source payments under *McConal* and that the collateral source rule does not apply to Allstate's postjudgment settlement. We agree with Steamatic.

{23} The collateral source rule, as applied in *McConal*, extends only to prejudgment settlements and does not extend to the postjudgment payment made by an adjudicated wrongdoer in satisfaction of its liability. *Id.* ¶¶ 20-21. As we explained in *Sanchez*, *McConal* holds only that "the collateral source rule applies to the *prejudgment* settlement of a claim involving neither a joint tortfeasor nor a joint obligor under a contract." *Sanchez*, 1994-NMSC-064, ¶ 10 (emphasis added); *see also Summit Props., Inc. v. Pub. Serv. Co. of N.M.*, 2005-NMCA-090, ¶ 46, 138 N.M. 208, 118 P.3d 716 (emphasizing the additional requirement that there be "no facts showing that the parties were jointly liable for the damages caused to the plaintiff"). The Court's opinion in *McConal* was based upon "principles of collateral

source and the encouragement of settlements." *Sanchez*, 1994-NMSC-064, ¶¶ 9-10. These principles and policies are not present in the postjudgment context. A defendant who settles with a plaintiff before liability is adjudicated does so voluntarily and forgoes the chance of gaining a better outcome at trial. *McConal*, 1990-NMSC-093, ¶¶ 19, 21. After adjudication, a defendant's payment is no longer voluntary but made in satisfaction of a legal judgment and with full knowledge of the extent of the defendant's liability.

{24}  It also is noteworthy that no reported decision in New Mexico has extended the collateral source rule to a postjudgment settlement. And Plaintiff has not persuaded us that the collateral source rule should be so extended. For example, Plaintiff argues that Allstate's payment is collateral because it represents a payment made by his own insurance company. We agree that the proceeds from a policy of insurance purchased for the benefit of a plaintiff are commonly a collateral source. *See, e.g.*, *Collateral-source rule*, *Black's Law Dictionary* (11th ed. 2019) ("Insurance proceeds are the most common collateral source."). However, the jury found Allstate liable for causing the same damages that Plaintiff now seeks to recover from Steamatic. We are not presented with the common circumstance of a blameless insurer compensating a plaintiff for damages caused by an unaffiliated wrongdoer. An adjudicated-liable defendant is not akin to an innocent collateral

12

source. *Cf. Sunnyland*, 2013-NMSC-017, ¶¶ 8, 53-54 (refusing to permit a liable defendant to exercise a subrogation lien acquired from the plaintiff's insurer because that defendant and the plaintiff's insurer are "not similarly situated").

{25}    Plaintiff also argues that Allstate is a collateral source because Allstate was neither a joint tortfeasor nor a joint contract obligor with Steamatic. Plaintiff highlights the fact that the jury rejected his theory of joint and several liability against Allstate by finding that Steamatic was acting as an independent contractor. He asserts that a severally liable defendant is a collateral source, emphasizing language in our jurisprudence that discusses principles of double recovery in relation to joint liability. *See, e.g., Summit Props.*, 2005-NMCA-090, ¶ 46 (noting that the collateral source rule as applied in *McConal* calls for offsetting damages already awarded to the plaintiff unless "there are no facts showing that the parties were jointly liable for the damages caused to the plaintiff").

{26}    We reaffirm that a jointly liable defendant is not a collateral source. *Sanchez*, 1994-NMSC-064, ¶¶ 6, 10. "Under the theory of joint and several liability, each tortfeasor is liable for the entire injury, . . . leaving it to the defendants to sort out among themselves individual responsibility based on theories of proportional indemnification or contribution." *Payne v. Hall*, 2006-NMSC-029, ¶ 11, 139 N.M. 659, 137 P.3d 599. "[P]ayments from a joint obligor on a contract are credited toward

13

the amount received from other joint obligors." *Summit Props.*, 2005-NMCA-090, ¶ 46.

{27}     We likewise reaffirm that a severally liable defendant is not a collateral source when it is allocated responsibility for paying the same damages allocated to another defendant. As we have repeatedly emphasized, a plaintiff is entitled to a single recovery for the same compensatory damages, regardless of the theory upon which liability is based. *Sanchez*, 1994-NMSC-064, ¶ 6; *Hood*, 1985-NMSC-048, ¶ 12. Typically, a severally liable defendant will not be responsible for the *same damages* as another defendant, because "[l]iability for proportionate fault is a liability for a distinct part of the damages and not for the same damages that may be apportioned to others." *Sanchez*, 1994-NMSC-064, ¶ 6; *see also Safeway, Inc. v. Rooter 2000 Plumbing & Drain SSS*, 2016-NMSC-009, ¶¶ 18-26, 368 P.3d 389 (surveying New Mexico's law—comparative fault, traditional indemnification, proportional indemnification, and contribution—as supporting a system under which each party is ultimately responsible for paying its own share of damages). However, as further explained below, Steamatic became responsible for paying the same damages allocated to Allstate due to an overlapping damages award in the final judgment and amended final judgment. In this situation, Allstate's satisfaction of the duplicative portion of the damages award extinguished Plaintiff's right to recover those same

damages from Steamatic. *See* Restatement (Second) of Judgments § 50 cmt. c (explaining and illustrating the principle that a defendant's payment for damages for which it is solely responsible does not discharge the liability of other defendants "except insofar as [the payment] extends beyond the losses for which the first [defendant] alone is responsible").

{28}    In sum, we agree with the Court of Appeals that the collateral source rule does not apply to Allstate's postjudgment settlement with Plaintiff. *Gonzagowski*, 2021-NMCA-056, ¶¶ 17-18. In making payment in satisfaction of the final judgment against it, Allstate was not acting as a "blameless but generous" party providing compensation for damages caused by an unaffiliated wrongdoer. *Sunnyland*, 2013-NMSC-017, ¶ 49. Allstate was paying for its own adjudicated fault.

**B.    The Amount of the Satisfaction**

{29}    Steamatic cross-appeals from the portion of the Court of Appeals' opinion addressing the amount of the offset. *See Gonzagowski*, 2021-NMCA-056, ¶¶ 9, 15. Steamatic argues that the damages Plaintiff may recover must be reduced by the duplicative damages allocated to and fully satisfied by Allstate and that the Court of Appeals erred by remanding to determine the dollar amount of the settlement. We agree that, under the circumstances presented, the amount of the offset is equal to the damages fully satisfied by Allstate.

{30} Like the Court of Appeals, we view the circumstances presented as "remarkably similar" to those presented in *Sanchez*. *Gonzagowski*, 2021-NMCA-056, ¶ 14. In *Sanchez*, the plaintiffs obtained a judgment against one group of defendants in federal court. 1994-NMSC-064, ¶¶ 3-4. The plaintiffs entered into a postjudgment settlement with that group of defendants but reserved the right to pursue recovery against a second group of defendants. *Id.* ¶ 4. The *Sanchez* plaintiffs thereafter sued the second group of defendants in state court. *Id.* ¶ 5. The plaintiffs admitted that they were seeking the same compensatory damages from both groups. *Id.* The trial court concluded that the plaintiffs' settlement with the defendants in the first action fully satisfied the plaintiffs' damages and barred further recovery, and thus the trial court dismissed the second action. *Id.* ¶¶ 1, 5.

{31} On appeal, the *Sanchez* Court similarly agreed that principles of double recovery applied to the plaintiffs' two actions and prohibited the plaintiffs' recovery for the same damages from the second group of defendants. *Id.* ¶¶ 6, 11. The *Sanchez* Court also acknowledged that *McConal* did not apply to the plaintiffs' postjudgment settlement with the first group of defendants. *Id.* ¶¶ 7-10. However, the *Sanchez* Court reversed the trial court because it determined that the plaintiffs were not seeking the *same damages* from the second group of defendants. *Id.* ¶¶ 11, 20. As the *Sanchez* Court explained, the plaintiffs could still seek punitive damages against

16

the second group of defendants. *Id.* ¶¶ 11-17. The plaintiffs could also potentially recover the portion of the plaintiffs' compensatory damages that had not been satisfied by the settlement with the first group of defendants. *Id.* ¶ 19.

{32}     *Sanchez* is dispositive of the issues presented in this appeal. Here, the district court entered a final judgment against Allstate, adjudicating the insurance company liable for $0.75 million or 30% of Plaintiff's damages. Allstate thereafter entered into a postjudgment settlement with Plaintiff. After Allstate satisfied its liability, the judgment was amended as only against Steamatic. This amended final judgment specified that Steamatic was responsible for $2 million, which was 80% of Plaintiff's compensatory damages, where the total amount of Plaintiff's damages remained as set by the jury at $2.5 million. *See Sanchez*, 1994-NMSC-064, ¶ 18 (noting that a plaintiff seeking the same damages in successive litigation "would be estopped from the recovery of compensatory damages greater than awarded in, but remaining unpaid from, a prior judgment"); Restatement (Second) of Judgments § 50 cmt. d ("The adjudication of the amount of the loss also has the effect of establishing the limit of the injured party's entitlement to redress, whoever the obligor may be."). Further, as Plaintiff had already accepted full satisfaction of the judgment against Allstate, Plaintiff could not dispute the validity of that prior judgment. *See State v. Fernandez Co.*, 1923-NMSC-007, ¶¶ 1-2, 28 N.M. 425, 213 P. 769 (holding in favor

17

of the general rule that acceptance in full satisfaction of a judgment precludes review of that judgment).

{33}     Because there were two judgments and a common total damages award, the 80% share of damages allocated to Steamatic in the amended final judgment partially duplicated the 30% share allocated to Allstate in the final judgment. In these circumstances, *Sanchez* would not permit Plaintiff to recover the duplicative portion of both defendants' combined liability damages. 1994-NMSC-064, ¶ 6 ("To the extent a judgment for damages is paid by one or more of the judgment debtors, . . . a claim for the *same damages* against any other person is extinguished regardless of the theories upon which the respective claims for relief are based.").

{34}     Thus, similar to *Sanchez*, Plaintiff's postjudgment settlement with Allstate satisfied Allstate's allocated share of Plaintiff's damages award. *Id.* ¶¶ 6, 11. Plaintiff's right to recover the same damages from Steamatic was extinguished to the extent of that satisfaction. *Id.* And Plaintiff could recover compensatory damages from Steamatic only to the extent that Plaintiff's damages were not yet satisfied. *Id.* We therefore agree with the Court of Appeals that the district court erred by denying Steamatic's request for an offset. *Gonzagowski*, 2021-NMCA-056, ¶¶ 8-9, 14. An offset was necessary due to Allstate's satisfaction of the same damages Plaintiff sought to recover from Steamatic. *See Sanchez,* 1994-NMSC-064, ¶ 19 (limiting the

18

plaintiffs' recovery from the second group of defendants to reflect partial satisfaction of the plaintiffs' damages).

{35} However, there is one part of the Court of Appeals' analysis that is inconsistent with *Sanchez*. The Court of Appeals held that the amount of the offset was to be determined in reference to the amount Plaintiff actually recovered from Allstate, and thus remanded the proceedings to determine the actual amount of Allstate's postjudgment settlement. *Gonzagowski*, 2021-NMCA-056, ¶¶ 9, 15. We disagree with that approach.

{36} Rather, we conclude that the record as it stands is sufficient for resolving this issue. As noted by *Sanchez*, a plaintiff "has an obligation to establish what compensatory damages [the plaintiff] is foregoing in the settlement if [the plaintiff] later wishes to show a right to recover compensatory damages in successive litigation." 1994-NMSC-064, ¶ 19. In *Sanchez,* the Court noted that the plaintiffs, in settling with the first group of defendants, had expressly reserved their cause of action against the second group of defendants. *Id*. Thus, the Court determined that the plaintiffs had reserved the right to recover a portion of the plaintiffs' compensatory damages that were not satisfied by the settlement. *Id.*

{37} In contrast, Plaintiff here has not shown that he reserved the right to further recover any part of the duplicative damages award in the settlement with Allstate.

19

Regardless of any dollar amount Plaintiff accepted from Allstate in settlement, Plaintiff accepted that payment in full satisfaction and release of the final judgment against Allstate. Plaintiff was thus "entitled to no more" for Allstate's share of the damages. *Fortuna Corp. v. Sierra Blanca Sales Co.*, 1976-NMSC-014, ¶ 12, 89 N.M. 187, 548 P.2d 865. And Plaintiff cannot now recover any part of this fully satisfied share from Steamatic. *Sanchez*, 1994-NMSC-064, ¶¶ 6, 11; *Vaca*, 1974-NMCA-011, ¶ 18 ("When payment of the judgment in full is made by the judgment debtor, . . . the plaintiff is barred from a further action against another who is liable for the same damages." (internal quotation marks and citation omitted)); Restatement (Second) of Judgments § 50 cmt. d ("[W]hen a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforc[ea]ble claim against any other obligor who is responsible for the same loss.").

{38}    We hold that a 30% share of Plaintiff's $2.5 million compensatory damages award, or $0.75 million, has been fully satisfied by Allstate and may not be recovered from another liable for the same damages. According to the amended final judgment, Steamatic is liable to Plaintiff for $2 million, representing an 80% share of Plaintiff's total damages. Steamatic's share must be reduced by $0.75 million to reflect Allstate's satisfaction of these same damages allocated to Steamatic. This means that

20

Plaintiff may recover $1.25 million in compensatory damages from Steamatic, exclusive of any award of pre- or postjudgment interest, costs, and fees. It appears from the record that Steamatic has already tendered a supersedeas bond for this amount.

## III.   CONCLUSION

{39}   Plaintiff may not recover duplicative damages from Allstate and Steamatic. We affirm the Court of Appeals insofar as it concluded that the collateral source rule does not apply to the payment Allstate made in satisfaction of the final judgment. *Gonzagowski*, 2021-NMCA-056, ¶¶ 17-18. We likewise affirm the Court of Appeals insofar as it held that the amount Plaintiff may recover from Steamatic must be reduced by Allstate's satisfaction of its portion of Plaintiff's compensatory damages. *Id.* ¶ 14. We reverse the Court of Appeals to the extent that it held that the amount of the reduction must be determined on remand to reflect the actual amount of Allstate's payment. *Id.* ¶¶ 9, 15. We direct that the amount of the reduction must equal the damages fully satisfied by Allstate. We therefore remand to the district court for entry of a second amended final judgment reflecting the satisfaction of 30% of Plaintiff's total damages by reducing Plaintiff's recovery from Steamatic by $0.75 million (to $1.25 million) and for other such proceedings as consistent with our opinion.

{40}     **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

_____

**C. SHANNON BACON, Chief Justice**

_____

**DAVID K. THOMSON, Justice**

_____

**BRIANA H. ZAMORA, Justice**

_____

**JAMES LAWRENCE SANCHEZ, Judge,
Sitting by Designation**